IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ENRIQUE MORENO,                )
                               )
        Plaintiff,              )
                               )        No. 16 C 9001
    v.                          )
                               )        Magistrate Judge Sidney I. Schenkier
NANCY A. BERRYHILL, Acting     )
Commissioner of Social Security,[1] )
                               )
        Defendant.              )

## MEMORANDUM OPINION AND ORDER[2]

Claimant Enrique Moreno ("Mr. Moreno" or "claimant") has filed this action seeking judicial review under 42 U.S.C. § 405(g) of a final decision of the defendant, Acting Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB"). Mr. Moreno filed for DIB on December 19, 2012, alleging a disability onset date of September 1, 2011 (R. 188-194, 211).[3] In his application for benefits, Mr. Moreno stated that he had cirrhosis of the liver, arthritis, and a left shoulder injury (R. 215). Mr. Moreno's claim was denied initially on April 2, 2013, and on reconsideration on November 21, 2013, after which he requested a hearing (R. 79, 87, 115). After a hearing on November 10, 2014, an Administrative Law Judge ("ALJ") found him not disabled on April 7, 2015 (R. 16). On July 25, 2016, the Appeals Council upheld the ALJ's determination, making it the final opinion of the Commissioner (R. 1-6). *See* 20 C.F.R. § 404.981; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On November 8, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 7).

[3] Mr. Moreno's date last insured is December 31, 2014 (R. 88).

We presently consider Mr. Moreno's motion for summary judgment to reverse or remand the Commissioner's decision (doc. # 20), and the Commissioner's cross-motion for summary judgment to affirm (doc. # 28). For the reasons that follow, Mr. Moreno's motion is granted and the Commissioner's motion is denied.

### I.

Mr. Moreno was born October 5, 1962 (R. 188). He worked on a factory assembly line manufacturing concrete parts for more than 15 years, but stopped working on December 20, 2009 when the factory closed (*Id.*). As far as we can tell from the record, Mr. Moreno did not look for another job after the factory closed and contends that as of his alleged onset date in September 2011, he was unable to work because of various conditions including arthritis in his back and neck, cirrhosis,[4] hernias, and esophageal varices[5] (R. 211, 215, 244). In a function report he completed on February 4, 2013, as part of his application for benefits, Mr. Moreno stated that after 30 minutes of work, he would get fatigued, his torso, neck and left arm and the left side of his head would hurt, and his fingers would get numb (R. 233). Also in the function report, Mr. Moreno stated that he was able to prepare his own meals, ride a bicycle, walk, do "therapy exercises" at the gym, shop for groceries, and make simple meals, but that these activities took much longer than they had previously (R. 234-236). He also reported being afraid "without reason" (R. 239). In a second function report associated with his appeal, dated June 14, 2013, Mr. Moreno added that he was very anxious and depressed, that his depression had

---

[4] Mr. Moreno is a recovering alcoholic, and his cirrhosis is likely a result of that. He does not claim that alcoholism is an impairment or direct cause of his inability to work (R. 325).

[5] Esophageal varices are abnormal, enlarged veins in the tube that connects the throat and stomach (esophagus). This condition occurs most often in people with serious liver diseases. https://www.mayoclinic.org/diseases-conditions/esophageal-varices/symptoms-causes/syc-20351538 (visited on February 7, 2018).

increased, that he had had an episode of bleeding from his esophageal varices, and that his shoulder pain was worse (R. 243-244).

Mr. Moreno underwent regular treatment for his impairments; the record reflects Mr. Moreno's visits to a number of different doctors, specialists, and treatment centers beginning in mid-2011 and lasting through mid-to-late 2014 (*see generally,* R. 304-342, 343-445, 477-497, 504-513, 582-593, 636-686). Mr. Moreno's treating physician was internist, Corinne Nawrocki, M.D., whom he saw on a regular basis at least as early as 2011; Dr. Nawrocki is copied on most of Mr. Moreno's medical records and apparently was the doctor who referred Mr. Moreno to the various specialists he saw (*Id.*). Dr. Nawrocki treated Mr. Moreno's arthritis, cirrhosis and hernias; she also prescribed the anti-depressant Citalopram in September 2013 (R. 448-474, 605, 685). Mr. Moreno received occasional cortisone injections for back and neck pain from the Pain Treatment Centers of Illinois, participated in physical therapy for his shoulder pain, and had surgery for his right-side hernia in February 2013 (R. 244-246, 290, 268, 448-476).

Mr. Moreno continued to experience abdominal pain after his hernia surgery and received nerve block injections at least through late 2014, which provided only minimal relief (636-650). At the hearing, Mr. Moreno testified that his right-side hernia was returning and he was likely going to need additional surgeries to repair both that condition and a second hernia on the left side (R. 64). He also testified that due to the hernias, one of his doctors had restricted him to lifting no more weight than a gallon of milk (R. 65). In November 2013, Mr. Moreno underwent an upper endoscopy to place esophageal bands to treat his varices, which had caused problems by bleeding (R. 797-799). Mr. Moreno underwent several more endoscopies to check for varices into 2014 (R. 816-818).

3

Orthopedist, Chintan Sampat, M.D., treated Mr. Moreno for neck pain between April and November 2013. At an appointment on August 29, 2013, Dr. Sampat gave Mr. Moreno an activity note excusing him from work "until further notice" because of cervical whiplash (R. 613).[6] Concurrent treatment notes from Dr. Sampat do not mention this diagnosis, although they do recommend Mr. Moreno undergo an MRI of the brain and cervical spine (R. 612).[7] The record does not show if or when Dr. Sampat lifted the work restriction; the next (and last) treatment note from him states that surgery is not indicated and that pain management and non-operative treatment would be appropriate (R. 611).

In September 2014, Dr. Nawrocki suggested that Mr. Moreno seek out a mental health evaluation (R. 677); he had such an evaluation with Adam Brown, M.D., of The Summit Center in October 2014 (R. 688). Dr. Brown diagnosed Mr. Moreno with moderate major depressive disorder and anxiety disorder and prescribed Prozac, the dosage of which was increased after Mr. Moreno reported no improvement in his depression (R. 689-691). Also in October 2014, Mr. Moreno underwent an intake session with a mental health therapist; after a second appointment with the therapist, the record does not reflect additional mental health treatment (R. 693-696).

## II.

In his opinion, the ALJ analyzed Mr. Moreno's claims using the traditional five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a). The process requires the ALJ to consider: (1) whether the claimant has engaged in any "substantial gainful activity" since the alleged disability onset date; (2) if his impairment or combination of impairments is severe; (3) whether his impairments meet or medically equal any

---

[6] As far as we can tell from the record, Mr. Moreno was not working in August 2013.

[7] The results of the MRI revealed mild spinal stenosis secondary to degenerative and arthritic changes; Mr. Moreno's brain MRI was normal (R. 611).

4

impairment listed in Appendix 1 of the regulations; (4) whether his residual functional capacity ("RFC") prevents him from performing past relevant work; and (5) if his RFC prevents him from performing any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), (b)-(f); 416.920(a). The claimant bears the burden of proof at Steps 1 through 4; the burden then shifts to the Commissioner at Step 5. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

The ALJ found that Mr. Moreno had the severe impairments of chronic liver disease and arthritis (R. 24). The ALJ also found that Mr. Moreno had a number of non-severe mental impairments, including affective disorder, substance abuse disorder, and anxiety (R. 25). In determining that Mr. Moreno's mental impairments were non-severe, the ALJ undertook the so-called "Paragraph B" analysis, which is set out in section 12.00C of the Listing of Impairments, 20 CFR, Part 404, Subpart P, Appendix 1. This analysis required the ALJ to analyze Mr. Moreno's mental health with respect to four broad functional areas: activities of daily living, maintaining social functioning, concentration, persistence or pace, and repeated episodes of decompensation, each for extended duration. *Id.*

The ALJ concluded that Mr. Moreno had no limitation in activities of daily living, as evidenced by his ability to undertake a wide range of activities including yard work, washing dishes, going to the gym and grocery store, dusting, and riding a bicycle, in addition to being able to manage a checkbook, perform light household repairs and take public transportation (R. 25). The ALJ similarly concluded that Mr. Moreno had no limitation in social functioning because he lived successfully in a house with his wife, had relationships with his adult children who drove him where he needed to go, attended Alcoholics Anonymous meetings, went to the gym and talked to people there and in other public venues, and reported having no problems

5

getting along with friends, family, or authority figures (*Id.*). With respect to concentration, persistence and pace, the ALJ found Mr. Moreno to have mild limitations, based on the fact that Mr. Moreno testified that he got headaches if he concentrated too hard (R. 69) and because daily pain from his two hernias affected his ability to concentrate (R. 26). The ALJ also noted that while Mr. Moreno testified that he did not need reminders to go places, he did say that he could pay attention for about 10 minutes at a time and that he did not handle stress or changes in routine well (*Id.*). Finally, the ALJ noted that Mr. Moreno had never experienced an episode of decompensation (*Id.*).

The ALJ assessed Mr. Moreno's RFC as allowing him to perform light work, which involved being able to lift and carry 20 pounds occasionally and 10 pounds frequently, pushing and pulling as much as he was able to lift and carry, and sitting, standing, or walking for six hours out of an eight-hour workday (R. 28). The ALJ found that Mr. Moreno was restricted from being around hazards such as heights or machinery, but was able to work near and avoid ordinary workplace hazards such boxes on the floor or open doors. Finally, the ALJ found that Mr. Moreno should never work around unprotected heights, moving mechanical parts, or in any job that required him to operate a motor vehicle (*Id.*). The ALJ gave this same RFC as a hypothetical to the vocational expert ("VE") who testified at the hearing; the VE stated that a person with these limitations would be able to perform a number of jobs in the economy, including housekeeper/cleaner, laundry aide, and mail clerk (R. 73).

In determining Mr. Moreno's RFC, the ALJ gave some weight to the opinions of two non-examining state agency doctors (R. 32). Dr. Vincent opined in March 2013 that Mr. Moreno did not have any severe impairments, and Dr. Hinchen concluded in November 2013 that Mr. Moreno did have some severe impairments but could perform medium work (R. 32). The ALJ

6

did not accept these opinions outright because both of the doctors examined an incomplete record, and subsequent documentation and testimony convinced the ALJ to reduce Mr. Moreno's RFC to the ability to perform light work (*Id.*). Additionally, the ALJ rejected the opinion of consultative examiner, Valerie Voss, M.D., who examined Mr. Moreno on March 12, 2013. Dr. Voss reviewed Mr. Moreno's medical records and then examined him directly (R. 519). In her report, Dr. Voss noted that daily abdominal pain limited Mr. Moreno's ambulation (R. 514-521). The ALJ discounted Dr. Voss' report because it was not a medical opinion but merely a recounting of Mr. Moreno's complaints (R. 32). While the ALJ summarizes Dr. Sampat's treatment notes, he does not mention the work restriction form that Dr. Sampat completed in August 2013.

With respect to Mr. Moreno's mental impairments, agency doctor, Glen Wurglitz, Psy.D., and psychiatrist, Adam Brown, M.D., both provided opinions about Mr. Moreno's mental health but did not complete formal mental health RFC opinions.[8] Based on an in-person examination, Dr. Wurglitz concluded in November 2013 that Mr. Moreno had adjustment disorder with mixed anxiety and depressed mood, along with a GAF[9] score of 53, indicating a moderate limitation in functioning (R. 605-608). Dr. Brown diagnosed Mr. Moreno in October 2014 with moderate recurrent depression and unspecified anxiety disorder, with a GAF of 57 (R. 688-692). The ALJ gave little weight to both GAF scores, explaining that each one was apparently derived primarily

---

[8] The record reflects that Dr. Brown saw Mr. Moreno on two occasions in October and November 2014 (R. 688-692). Claimant does not contend that Dr. Brown was one of his treating physicians.

[9] The Global Assessment of Functioning ("GAF") is a system used to score the severity of psychiatric illness. http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/ (visited on February 21, 2018). A score of 50 is at the high end of having serious symptoms or serious impairment in social or occupational functioning, and a score of 55 places an individual in the middle of having moderate impairments in social or occupational functioning. http://www.albany.edu/counseling_center/docs/GAF.pdf (visited on February 21, 2018). We note that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed.2013). *See Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing the discontinuation of use of the GAF scale after 2012).

from Mr. Moreno's subjective complaints (R. 27). Moreover, Dr. Wurglitz's GAF opinion was rendered after a one-time evaluation and was in contrast to another agency doctor,[10] who examined more of the record and concluded Mr. Moreno had only mild limitations (*Id.*). And Dr. Brown's GAF opinion did not follow any formal psychological testing and was made in the midst of a medication change (*Id.*). The ALJ did not give a specific weight to any part of the two opinions other than rejecting the GAF scores. Instead, the ALJ gave great weight to consultative examiner, Russell Taylor, Ph.D., who opined in November 2013 that Mr. Moreno had mild restrictions in activities of daily living, in social functioning, and in concentration, persistence, and pace, but that his mental limitation was non-severe (R. 28, 94, 95).

### III.

We review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (internal citations omitted). We do not reweigh evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015).

Claimant alleges four errors by the ALJ in finding him not disabled (Pl. Mem. in Support of Summ. J). We remand for two reasons: (1) the ALJ failed to explain how he determined that Mr. Moreno could work at the light exertional level; and (2) the ALJ failed to account for Mr.

---

[10] This doctor is likely Russell Taylor, discussed below.

8

Moreno's non-severe mental health limitations in his RFC. As a result, we do not address claimant's other assignments of error.

### A.

Mr. Moreno first argues that the ALJ failed to adequately explain how he determined Mr. Moreno had a light RFC, because he gave only "some weight" to the opinion of Dr. Hinchen, who opined that Mr. Moreno could work at the medium exertional level. The Commission disagrees this was an error, noting that SSA regulations presume that a claimant who can perform work at the medium exertion level must also be able to perform work at the light or sedentary levels. (Def. Mem. in Support of Summ. J. at 7, *citing* 20 C.F.R. § 404.1567(c)). While the Commissioner correctly restates the regulation, it is inapplicable here. The light work RFC adopted by the ALJ could not be encompassed within Dr. Hinchen's medium RFC because the ALJ did not accept Dr. Hinchen's opinion on that score. The ALJ specifically noted that he did <u>not</u> accept that opinion, and reduced Mr. Moreno's RFC to light work because Dr. Hinchen did not review a number of subsequent medical records. The problem with this approach is that the ALJ did not adequately explain how he concluded that Mr. Moreno retained the capacity to do light work as opposed to, for example, sedentary work. *See Eakin v. Astrue,* No. 10-3121, 2011 WL 2580355 *3 (7th Cir., June 30, 2011).

It is not clear from the record exactly what medical evidence Dr. Hinchen examined before rendering his RFC opinion. While Dr. Taylor's section of the disability determination form that contains all of the consultative opinions lists a number of medical records dating through September 2013, the later narrative portion of the document associated with Dr. Hinchen's opinion specifically says no medical records dated later than March 12, 2013 had been reviewed (R. 99). Significantly, it appears that Dr. Hinchen did not review any of the medical

9

records concerning Mr. Moreno's complaints of pain from his hernias, his subsequent surgery to repair his right-side hernia, or medical evidence that the surgery did not alleviate his symptoms or pain (R. 540-544, 569-579). It is also not apparent if Dr. Hinchen reviewed medical evidence related to Mr. Moreno's complaints of or treatment for neck pain (R. 584-587). And, even if Dr. Hinchen did review some medical records from mid-2013, it is undisputed that Dr. Hinchen did not review another year's worth of medical records from Dr. Nawrocki, who treated Mr. Moreno for various issues including hernia pain and surgery (R. 636-643). Dr. Hinchen also did not review records related to Mr. Moreno's esophageal varices or the treatment he underwent for them (R. 797-798, 811).

An ALJ must base his or her RFC determination "on all the relevant evidence in the record." *Varga v. Colvin,* 794 F.3d 809, 812 (7th Cir. 2015). An ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence." *Arnett v. Astrue,* 676 F.3d 586, 591 (7th Cir. 2012).

Instead of asking for another medical opinion concerning the records not reviewed by Dr. Hinchen, the ALJ impermissibly "played doctor" and interpreted them on his own. *Moon v. Colvin,* 763 F.3d 718, 722 (7th Cir. 2014); *see also, Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) (significant evidence submitted after last medical opinion in the record should be submitted to new medical expert for review). Moreover, the ALJ compounded that error by failing to explain exactly what in the medical evidence justified that finding. Given the significant medical evidence concerning Mr. Moreno's hernia that was never reviewed by any medical expert, it was error for the ALJ to conclude on his own that Mr. Moreno was nonetheless able to perform light work.

**B.**

The ALJ also erred by failing to account for Mr. Moreno's mild restrictions in concentration, persistence and pace in his RFC determination. It is true that the ALJ does specifically state that "the mild limitation assessed in my discussion of the paragraph 'B' criteria does not warrant any non-exertional mental limitations" (R. 32). The question the ALJ does not answer is how he came to this determination. An RFC determination must account for all impairments that are supported by the medical record, both severe and non-severe. *Murphy v. Colvin,* 759 F.3d 811, 820 (7th Cir. 2014). While an ALJ is allowed to decide that a non-severe impairment does not warrant additional limitations in the RFC, he must adequately explain in the opinion how he arrived at that conclusion. *Denton v. Astrue,* 596 F.3d. 419, 423 (7th Cir. 2010) (failure to fully consider the impact of non-severe impairments requires reversal).

The ALJ apparently concluded that Mr. Moreno's mild limitations in concentration, persistence and pace did not prevent him from performing the jobs identified by the VE as available to someone with Mr. Moreno's RFC. But, the ALJ never asked the VE that question or gave the VE a hypothetical that contained limitations for concentration, persistence and pace.[11] Absent any explanation at all about why this assessed non-severe impairment did not impact Mr. Moreno's RFC, the ALJ failed to build an "accurate and logical bridge" from the evidence of Mr. Moreno's non-severe impairments to the determination that such impairments did not affect his ability to work.

---

[11] The ALJ did give the VE a hypothetical that limited an individual to "simple tasks and simple work-related decisions, due to symptoms of depression . . . defined . . . to be SVP 1 and 2 type jobs," and the VE testified that the jobs she had identified under the first hypothetical would still be available (R. 73-74). But, even assuming that the ALJ intended for this question to cover Mr. Moreno's limitations in concentration, persistence, and pace, the Seventh Circuit has explained that these terms refer to unskilled work which can be learned in fewer than 30 days, and not whether a person with mental impairments can perform such work. *Lanigan v. Berryhill,* 865 F.3d 558, 566-67 (7th Cir. 2017).

## CONCLUSION

For the foregoing reasons, we grant Mr. Moreno's motion for summary judgment (doc. # 20) and deny the Commission's motion (doc. # 28). We therefore remand the case for further action consistent with this opinion.

**ENTER:**

_/s/ Sidney I. Schenkier_
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: February 28, 2018**